Filed 1/31/22  Tomar v. City and County of San Francisco CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| SAKSHI TOMAR et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Defendant and Respondent. | A161971<br><br>(San Francisco County<br>Super. Ct. No. CGC-19-576120) |

After Sakshi Tomar was struck by a car while crossing a street in the City and County of San Francisco (City), she and her husband (Plaintiffs) sued the City, claiming the intersection was a dangerous condition of public property (Gov. Code, § 835).[1]  The trial court granted the City's motion for summary judgment, finding the intersection was not a dangerous condition as a matter of law.  We affirm.

---

[1] All undesignated section references are to the Government Code.

1

## FACTUAL BACKGROUND

On December 10, 2018, at about 6:45 p.m., Tomar was walking north on Connecticut Street and began to cross 16th Street at a marked crosswalk. Peter Katsoulis was driving eastbound on 16th Street and struck Tomar.

The intersection of 16th Street and Connecticut Street is a "T" intersection, with Connecticut Street terminating at the intersection. The roadway is straight and flat. At the time of the accident, there were painted crosswalks across 16th Street on both sides of Connecticut Street, but no traffic signal. There were six fluorescent yellow-green pedestrian warning signs on 16th Street at the approach to the intersection, three facing drivers approaching the intersection from each direction. Pedestrian safety zones were marked at the intersection.[2]

The subject intersection had changed in various ways in the years preceding the accident. In 2016, a large apartment building was constructed at the intersection. At some point between 2016 and 2017, 16th Street was expanded from two lanes to four lanes. During the same time period, the crosswalks across 16th Street were painted. At some point, two pedestrian warning signs were installed; in March 2018, four additional warning signs were installed. The pedestrian safety zones were added in July 2018.

## PROCEDURAL BACKGROUND

In 2019, Plaintiffs sued the City, alleging the intersection was a dangerous condition of public property.[3]

---

[2] "A 'safety zone' is the area or space lawfully set apart within a roadway for the exclusive use of pedestrians and which is protected, or which is marked or indicated by vertical signs, raised markers or raised buttons, in order to make such area or space plainly visible at all times while the same is set apart as a safety zone." (Veh. Code, § 540.)

[3] The complaint also alleged claims against Katsoulis and his employer.

The City moved for summary judgment on the ground (among others) that the intersection was not a dangerous condition of public property. The City submitted a declaration from Manito Velasco, a senior traffic engineer with the City. He averred, "Based on my review of the collision history data collected by the City and County of San Francisco," there were no vehicle-pedestrian accidents at the intersection from January 2014 through December 2018. He opined, "the absence of a significant pedestrian collision history in the crossing of eastbound 16th Street at Connecticut Street, along with the presence of a marked crosswalk, pedestrian crossing signs, and adequate sight lines together shows that the crossing does not present a 'trap' to either pedestrians or motorists at that location."

The City submitted photographs of the intersection taken by Plaintiffs after dark a few days after the accident, and subsequently produced to the City in discovery. The City also submitted an expert declaration from Kevan Shafizadeh, a civil and traffic operations engineer. Shafizadeh based his declaration on his review of the City's records on the intersection, the photographs taken by Plaintiffs, and Velasco's declaration. He opined the intersection was not a dangerous condition.

With their opposition, Plaintiffs submitted two expert declarations: one from an expert in civil engineering and transportation design, and one from an expert in "human factors." Plaintiffs' engineering expert reviewed various documents and visited the site. He noted the intersection had "high-visibility crosswalk markings" but did not include certain "advance warning signs for the pedestrian crossing." He opined, "The lack of proper warning devices such as advance pedestrian crossing warning signs and pedestrian crossing warning lights at the crosswalk presented a significant risk of danger and

3

injury to pedestrians utilizing due care when crossing 16th Street at this crosswalk."

The human factors expert averred that the intersection was insufficiently lit and that the headlights of a vehicle coming toward Katsoulis as he approached the intersection was "likely a source of glare . . . reducing his ability to detect" Tomar. He opined that, with additional lighting, Katsoulis "would have been more likely to detect" Tomar.

Plaintiffs also submitted excerpts from the deposition testimony of Velasco and Shafizadeh, among others; a motion to strike Shafizadeh's declaration; and numerous objections to the City's evidence.

The trial court granted summary judgment for the City, finding the intersection was not a dangerous condition of public property as a matter of law. This appeal followed.

## DISCUSSION

I. *Legal Background*

A. *Summary Judgment*

"A defendant may move for summary judgment 'if it is contended that the action has no merit . . . .' (Code Civ. Proc., § 437c, subd. (a).) 'A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' (*Id.* subd. (p)(2).) 'The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a

4

matter of law.' (*Id.* subd. (c).)" (*Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, 1182 (*Sun*).)

" 'We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.' [Citation.] [¶] 'In undertaking our independent review of the evidence submitted, we apply " 'the same three-step process required of the trial court: First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " ' " (*Sun, supra,* 166 Cal.App.4th at pp. 1182–1183.)

B.    *Dangerous Condition of Public Property*

"A public entity is generally liable for injuries caused by a dangerous condition of its property if 'the property was in a dangerous condition at the time of the injury, . . . the injury was proximately caused by the dangerous condition, . . . the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and . . . either: [¶] . . . [a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] . . . [t]he public entity had actual or constructive notice of the dangerous condition [in time to prevent the injury].' (Gov. Code, § 835.) [¶] For purposes of an action brought under section 835, a ' "dangerous condition," as defined in section 830, is "a condition of property that creates a substantial . . . risk of injury when such property or adjacent property is used with due care" in a

5

"reasonably foreseeable" manner. (§ 830, subd. (a).)' " (*Sun, supra,* 166 Cal.App.4th at p. 1183, fn. omitted.) "With respect to public streets, courts have observed 'any property can be dangerous if used in a sufficiently improper manner. For this reason, a public entity is only required to provide roads that are safe for reasonably foreseeable careful use. [Citation.] "If [ ] it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not 'dangerous' within the meaning of section 830, subdivision (a)." ' " (*Ibid.*)

" 'Ordinarily, the existence of a dangerous condition is a question of fact, but whether there is a dangerous condition may be resolved as a question of law if reasonable minds can come to but one conclusion. [Citation.] "[I]t is for the court to determine whether, as a matter of law, a given defect is not dangerous. This is to guarantee that cities do not become insurers against the injuries arising from trivial defects." ' " (*Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 755 (*Thimon*).)

II.  *Analysis*

A.    *The City Established The Intersection Is Not A Dangerous Condition As A Matter of Law*

Plaintiffs' form complaint does not identify the aspects of the intersection that allegedly make it a dangerous condition. The characteristics identified in Plaintiffs' summary judgment opposition below and briefs on appeal are the following: insufficient lighting, inadequate traffic controls, the expansion of 16th Street from two lanes to four lanes which resulted in more speeding, and the location of the crosswalk in light of the above features. The City argues, as it did below, that these characteristics—

6

either separately or together—are insufficient as a matter of law to constitute a dangerous condition. We agree.

First, inadequate lighting. It is well established that "[a] public entity is under no duty to light its streets. [Citation.] ' "In the absence of a statutory or charter provision to the contrary, it is generally held that a municipality is under no duty to light its streets even though it is given the power to do so, and hence, that its failure to light them is not actionable negligence, and will not render it liable in damages to a traveler who is injured solely by reason thereof." ' [Citations.] A duty to light, 'and the consequent liability for failure to do so,' may arise only if there is 'some peculiar condition rendering lighting necessary in order to make the streets safe for travel.' [Citation.] In other words, a prior dangerous condition may require street lighting or other means to lessen the danger but the absence of street lighting is itself not a dangerous condition." (*Mixon v. Pacific Gas & Electric Co.* (2012) 207 Cal.App.4th 124, 133 (*Mixon*).)

Plaintiffs argue such a peculiar condition is present here, namely, "the brightly lit windows" of the apartment building and the "glare of oncoming headlights," which resulted in pedestrians being "unexpectedly shrouded in darkness when entering the crosswalk." Plaintiffs cite their human factors expert's declaration, but this expert concluded only that Katsoulis's vision was impaired by poor street lighting and glare from oncoming headlights; the expert did not identify window lights as a source of impairment or find the lighting condition created an unexpected shadow on the crosswalk. Headlight glare from oncoming traffic is not a "peculiar condition" in an urban area, and does not give rise to a duty to redesign intersections where it may occur (presumably any intersection with two-way traffic). (See *Thimon,*

7

*supra,* 44 Cal.App.5th at p. 762 ["sun glare without the presence of other hazardous conditions" does not create a dangerous condition].)

Second, Plaintiffs point to inadequate traffic controls. "[T]he Legislature has expressly declared that '[a] condition is not a dangerous condition . . . merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings [of parallel dividing lines] as described in Section 21460 of the Vehicle Code.' (Gov. Code, § 830.4.) 'Thus, the statutory scheme precludes a plaintiff from imposing liability on a public entity for creating a dangerous condition merely because it did not install the described traffic control devices.' [Citation.] In short, '[t]he lack of a traffic signal at the intersection does not constitute proof of a dangerous condition.' " (*Mixon, supra,* 207 Cal.App.4th at p. 135.)

Plaintiffs highlight evidence that the City had approved the installation of traffic lights at the subject intersection but had not yet performed the installation at the time of the accident. Plaintiffs cite no authority that the statutory provision discussed above does not apply where a public entity has approved, but not yet installed, the traffic control devices.[4] We see no basis to so find.

---

[4] The case cited by Plaintiffs, *Briggs v. State of California* (1971) 14 Cal.App.3d 489, does not so hold. That case involved an undisputed dangerous condition, a significant mudslide on a state highway; the state had placed an "inadequate warning sign" and the court found that while " 'a public entity may not be held liable for failure to install traffic signs or signals, when it does so in such a manner as to constitute a trap, liability may be imposed for the maintenance of a dangerous condition.' " (*Id.* at p. 497.) In contrast, the failure to install traffic lights at the subject intersection does not constitute a trap. (See *Mixon, supra,* 207 Cal.App.4th at p. 136 ["a concealed dangerous condition that is a trap to motorists or

Third, Plaintiffs identify the expansion of 16th Street from two lanes to four and the resulting increase in driving speed. Plaintiffs also note the development of the apartment building and the resulting increase in pedestrians. "The combination of high-speed traffic and heavy pedestrian use alone simply does not lead to public entity liability." (*Sun, supra,* 166 Cal.App.4th at p. 1190.) Indeed, the argument that increased speeds resulting from widening a street created a dangerous condition has been expressly rejected: "that the volume and speed of vehicular traffic on Chase Avenue increased after it was widened . . . would not permit a finding of a dangerous condition, at least in the absence of some additional allegation that the physical characteristics of Chase Avenue created a substantial risk that a driver using due care while traveling along Chase Avenue would be unable to stop for pedestrians who were using due care while crossing at the Chase/Estes intersection." (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 440 (*Brenner*).) The same result applies here.

Fourth, Plaintiffs argue the location of the crosswalk "channeled" pedestrians into this assertedly dangerous intersection. Again, a similar argument has been rejected: "[The plaintiff's] expert theorized that marking the crosswalk increased the likelihood that a pedestrian like [the plaintiff] would use it. This theory does not create a triable issue of fact. Assuming more pedestrians used the intersection because the crosswalk was marked does not establish the crosswalk was a dangerous condition because an increase in pedestrian use did not increase or intensify the danger of injury to [the plaintiff] when she used the crossing." (*Thimon, supra,* 44 Cal.App.5th at p. 760.) Plaintiffs' reliance on *Bonanno v. Central Contra Costa Transit*

_____

pedestrians may require the posting of a warning sign but the absence of a warning sign itself is not a dangerous condition"].)

*Authority* (2003) 30 Cal.4th 139 (*Bonanno*) is unavailing.  In that case, the Supreme Court expressly stated it was not considering "whether the crosswalk . . . was in fact an unsafe pedestrian route for crossing," and instead "assume[d] the existence of a dangerous crosswalk."  (*Id.* at pp. 146–147.)  Thus, that the Supreme Court held the location of a bus stop—which required bus riders to use the allegedly unsafe crosswalk—was a dangerous condition does not impact our analysis.  (See *Brenner, supra,* 113 Cal.App.4th at p. 442 ["*Bonanno* assumed the crossing was a dangerous condition; the precise question here is *whether* the Chase Avenue crossing was a dangerous condition. . . . Because *Bonanno* did not address the issue raised by [the plaintiff], and instead assumed the existence of a dangerous crosswalk, *Bonanno* does not illuminate the issues in this case."]; accord, *Sun, supra,* 166 Cal.App.4th at p. 1194, fn. 10.)

In addition to arguing these physical characteristics created a dangerous condition, Plaintiffs challenge the City's evidence that no accidents occurred at the intersection between 2014 and December 2018.  Velasco's declaration based his averment that there were no such accidents on his "review of the collision history data collected by the City and County of San Francisco."  The trial court overruled Plaintiffs' objections to this evidence.  On appeal, Plaintiffs cursorily assert Velasco's averment is "unsubstantiated" and point to a case in which the public entity submitted a report documenting prior accidents in the relevant area generated from a "Traffic Accident Surveillance and Analysis System" maintained by the public entity.  (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1064.)  Plaintiffs provide no authority that such a report is necessary or that the trial court's ruling was in error.  When a trial court overrules an evidentiary objection in summary judgment proceedings, "[o]n appeal, the burden is on the objecting

party to renew any relevant objections by arguing the issue with relevant authority and legal analysis." (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 980.) Plaintiffs have failed to do so, and their challenge to this evidence therefore fails.

Plaintiffs also point to evidence of the changes to the intersection during the time period in which there were no accidents, specifically, the construction of the apartment complex and the marking of the crosswalks. Even assuming these changes lessen the evidentiary weight of the absence of accidents, they do not create a triable issue of material fact as to whether the intersection is a dangerous condition.

Finally, Plaintiffs argue that, even if the above characteristics individually are insufficient as a matter of law, taken together they can be evidence that the intersection is a dangerous condition. "It is true that a dangerous condition may consist of an ' "amalgam" of factors.' " (*Thimon, supra,* 44 Cal.App.5th at p. 757.) *Thimon* considered a similar argument: "[T]he complaint alleges that the glare from the morning sun at certain times of the year and the day obscured motorists' ability to see pedestrians; that the placement of a crosswalk with only single white lines was improper; that the failure to install 'stop signs,' 'traffic signals,' a 'blinking yellow arterial to warn drivers of the impending crosswalk' or 'pedestrian actuated mechanisms to alert a driver of a pedestrian's use of the crosswalk' made the crosswalk dangerous; and that the 'hazards presented by [the intersection's] location' (such as the four-lane width of Cherry Street, 45-mile-per-hour speed limit and the heavy morning commute traffic) contributed to the danger. Nonetheless, [the plaintiff] fails to explain how a defendant faced with this kind of kitchen-sink approach is to carry his or her burden to address such a multiplicity of factual theories. Other than to address, as to

11

each alleged factor, why it does not constitute a dangerous condition, whether alone *or in combination with others*, and/or to present evidence, such as the absence of similar collisions, that otherwise demonstrates that no condition of the property posed a substantial risk of injury to persons exercising due care, we can think of none." (*Id.* at pp. 757–758.)[5] The City presented evidence that there were no collisions at the intersection in the five years preceding the accident, and has demonstrated the factors identified by Plaintiffs do not create a dangerous condition as a matter of law, whether considered individually or together. (See *ibid.; Mixon, supra,* 207 Cal.App.4th at pp. 137–138 ["The evidence presented . . . fails to raise a triable issue of fact on the element of a dangerous condition of property whether the factors are considered alone or in combination."].)

"A public entity is not required to go beyond the elimination of danger and maximize every safety precaution." (*Mixon, supra,* 207 Cal.App.4th at p. 136.) Indeed, "the overwhelming weight of authority, including from our own court, strongly suggests that an intersection with a crosswalk but no signals, whether marked or unmarked, is *not* a dangerous condition within the meaning of the Government Claims Act even when it is located on a high-speed, high traffic road, particularly in the absence of a history of other collisions." (*Thimon, supra,* 44 Cal.App.5th at p. 762.) We conclude the City demonstrated the intersection is not a dangerous condition as a matter of law.

---

[5] In contrast, in *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, relied on by Plaintiffs, there was evidence that multiple physical characteristics combined to create a dangerous condition: the use of a gravel strip between a roadway and a park as both a parking area for park visitors and a second lane for roadway drivers to pass stopped traffic. (*Id.* at pp. 759–761.)

B. *Plaintiffs' Additional Arguments Do Not Establish A Triable Issue of Material Fact*

Plaintiffs' remaining contentions are unavailing. Plaintiffs argue the trial court improperly found they failed to prove causation as a matter of law. While causation is one of the elements of a dangerous condition claim, the trial court did not grant summary judgment on this ground, instead finding the intersection was not a dangerous condition as a matter of law.

Plaintiffs repeatedly emphasize complaints about the intersection received by the City. This evidence does not create a triable issue of material fact as to whether the intersection is a dangerous condition. "[W]hile the citizens' letters are relevant to the issue of whether City had notice of a potentially dangerous intersection, they are not competent evidence that the intersection was, in fact, a 'dangerous condition' within the meaning of section 835." (*Sun, supra,* 166 Cal.App.4th at p. 1188.) Plaintiffs attempt to distinguish *Sun,* arguing the complaints in that case were lacking factual information and were decades old. The court's conclusion does not appear to rest on either of these factors. In addition, given that an expert opinion that a dangerous condition is present is not necessarily sufficient to create a triable issue of material fact, we fail to see how citizen complaints could be.[6] (See *Thimon, supra,* 44 Cal.App.5th at pp. 763–764 ["[E]xpert opinions on whether a given condition constitutes a dangerous condition of public property are 'not determinative' and do not necessarily raise triable issues of fact. [Citation.] On the contrary, in fulfilling its ' "statutory task, pursuant to [Government Code] section 830.2, of independently evaluating the

---

[6] For the same reason, Plaintiffs' reliance on statements made about the intersection by officers responding to the accident does not create a triable issue.

circumstances," ' a court may determine that the conditions shown do not constitute a dangerous condition as a matter of law and that no triable issue of material fact has been raised by the evidence, including one or more expert declarations."].) We note the City made changes to the intersection, including installing additional pedestrian warning signs and the pedestrian safety zones, following its receipt of all but one of the complaints.

Plaintiffs point to various facts distinguishing *Sun, Mixon,* and *Thimon* from the facts of this case. We agree with *Thimon's* response to a similar argument: "While [the plaintiff] correctly points out that none of these cases addressed the precise same list of conditions she has alleged here, they and other cases implicitly reject the idea that an intersection on a heavily travelled thoroughfare is made dangerous by the type or existence of crosswalk markings, the lighting conditions, or the lack of traffic signals or other devices." (*Thimon, supra,* 44 Cal.App.5th at p. 763, fn. omitted.)

Plaintiffs identify numerous disputed facts, but fail to establish that any of these facts are material. For example, Plaintiffs point to facts about citizen complaints, comments about the intersection made by officers responding to the accident, the City's approval of a plan to install traffic lights, and the glare of headlights from oncoming drivers. We have explained above how none of these facts render the intersection a dangerous condition.

Finally, Plaintiffs raise a number of arguments regarding the City's expert, Shafizadeh, and argue the trial court erred by not striking his declaration in whole or in part. We need not, and do not, address Plaintiffs' multiple contentions on this point, because Shafizadeh's declaration is not necessary to our decision affirming the trial court's judgment on de novo review. Accordingly, any error in failing to strike the declaration is harmless.

In sum, the intersection was not a dangerous condition as a matter of law.[7]

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

<br>

_____
SIMONS, Acting P. J.

<br>

We concur.

<br><br>

_____
NEEDHAM, J.

<br><br>

_____
BURNS, J.

<br>

(A161971)

---

[7] Because of this conclusion, we need not decide whether, as the parties dispute, any of the alternative bases for summary judgment raised below provide a basis to affirm.

15